J-S66045-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: A.N.H. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.M.H., FATHER | |
| | No. 1095 WDA 2017 |

Appeal from the Order Entered June 22, 2017
in the Court of Common Pleas of Clearfield County
Orphans' Court at No.: OC-3393-2016

BEFORE: BENDER, P.J.E., DUBOW, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 29, 2017**

Appellant, B.M.H. (Father), appeals from the order of the Court of Common Pleas of Clearfield County (trial court), entered June 22, 2017 that involuntarily terminated his parental rights to his daughter, A.N.H. (Child) (born 4/04). S.L.S. (Mother), who was S.L.H. until she remarried following her divorce from Father, filed a petition to terminate Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) on December 7, 2016, so that her husband D.S., (Stepfather) could adopt Child. We affirm.

Mother and Father married in North Carolina in September of 2006 and moved to Clearfield, Pennsylvania in 2008, where they resided until separating in the Fall of 2015. They resolved the question of custody by an

_____

[*] Retired Senior Judge assigned to the Superior Court.

agreed order of custody entered December 10, 2015, that provided Mother primary physical custody and Father periods of partial physical custody as the parties might mutually agree.

Father initially visited with Child at the marital residence but his visits were eventually moved to (and were supervised at) the Safe Haven Program after concerns arose for Mother's safety.

Mother filed for an order of protection from abuse (PFA) against Father in January of 2016. The trial court issued a PFA effective for one year. Father violated the order on more than one occasion but did not initially suffer any consequences because he left Pennsylvania for North Carolina in May of 2016. When Father returned to Clearfield County in December of 2016, he was incarcerated on those violations until the hearing in this matter on March 28, 2017.

The trial court held a hearing on Mother's petition on March 28, 2017. Testifying at that hearing, in addition to Mother, were Father and Stepfather. The trial court entered its order terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b) on June 22, 2017. Father filed his notice of appeal and statement of errors complained of on appeal on July 13, 2017.

Father raises the following questions for our review:

I. Whether the trial court erred as a matter of law or abused its discretion by involuntarily terminating [Father's] parental rights pursuant to 23 [Pa.C.S.A.] []§ 2511(a)(1)?

II. Whether the trial court erred as a matter of law or abused its discretion by finding that terminating [Father's] parental rights would best serve [Child's] needs and welfare pursuant to 23 [Pa.C.S.A.] § 2511(b)?

(Father's Brief, at 4) (unnecessary capitalization omitted).

Our standard of review is well-settled:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

The trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). Requests to have a natural parent's

parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.–**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.–**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004). Further,

A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (internal citations omitted).

In regard to incarcerated persons, our Supreme Court has stated:

[I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that [sic] the causes of the incapacity cannot or will not be remedied.

*In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012).

\* \* \*

[W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). *See e.g. Adoption of J.J.*, [511 Pa. at 605], 515 A.2d at 891 ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [*In re:*] *E.A.P.*, [944 A.2d 79, 85 (Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs). If a court finds grounds for termination under subsection (a)(2), a

court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*Id.* at 830-31.[1]

To terminate parental rights pursuant to section 2511(a)(1), the person or agency seeking termination must demonstrate through clear and convincing evidence that, for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrates a settled purpose to relinquish parental rights or that the parent has refused or failed to perform parental duties. **See In re Adoption of M.E.P.**, 825 A.2d 1266, 1272 (Pa. Super. 2003).

With respect to subsection 2511(a)(1), our Supreme Court has held:

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

---

[1] Our Supreme Court cited its decision in **In re: Adoption of McCray**, 331 A.2d 652, 655 (Pa. 1975), for the proposition that termination may be appropriate for an incarcerated parent who has failed to perform his parental duties for a six-month period of time (section 2511(a)(1)). **See in re Adoption of S.P.**, **supra** at 828.

*Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 92 (Pa. 1998) (citation omitted). Further,

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re N.M.B.*, 856 A.2d 847, 854-55 (Pa. Super. 2004) (citations omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. *See In re E.M.*, 620 A.2d 481 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *See In re K.K.R.-S*., 958 A.2d 529, 533 (Pa. Super. 2008).

Here, Father first claims that the trial court erred in finding that there was sufficient evidence to terminate his parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1). (*See* Father's Brief, at 14). We disagree.

After independent review, we agree with the trial court's analysis of this issue. It reasoned as follows:

> Father left the Commonwealth and moved to North Carolina in May of 2016. It is important to note that Father did

not inform Mother as to the location of his residence or how he could be reached for purposes of custody. Father returned to the Commonwealth approximately seven (7) months later; however, during this seven (7) month span, Father's contact with the Child was nearly non-existent. With the exception of one (1) postcard in June, Father did not send any gifts, cards, or other letters to the Child. Father also did not make any attempt to see the Child, despite knowing where the Child resided.

During the six (6) months preceding the filing of the Petition, Father did not make any phone contact with the Child. While it is true that the Child did not have her own cell phone, and Mother blocked Father's phone number in relation to the aforementioned Protection from Abuse Order, Mother did provide a skype account through which Father could reach and communicate with the Child at his convenience. However, Father exercised this option only once. Further, although Father testified that he had purchased a cell phone for the Child, it is important to note that it was of the prepay variety, requiring the purchase of usable minutes. Father testified that he never purchased any minutes for the phone; thus, the phone which Father supplied to the Child was virtually useless.

Father also failed to perform any parental duties with respect to the Child or provide any financial support. Despite having shared legal custody, Father testified that he never contacted the Child's school district to gain information regarding the Child's academic progress, nor did he reach out to any of the Child's doctors. Of course, Father also did not attend any doctor's appointments, school events, or extracurricular activities of the Child, as Father resided in an unknown location in North Carolina, hundreds of miles away, for the seven (7) months preceding the filing of the Petition. Further, Mother testified that from May to December of 2016, Father made only one (1) child support payment. She also testified that in the eighteen (18) months preceding the hearing, Father made three (3) child support payments in total. In light of these facts, the Court is satisfied that Father had evidenced a settled purpose of relinquishing his parental claim to the Child and had refused or failed to perform any parental duties for at least six (6) months prior to the filing of the instant Petition.

(Trial Court Opinion, 6/22/17, at 3-4).

We conclude that the trial court did not err or abuse its discretion when it terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1).

Father also claims that there was insufficient evidence to permit the trial court to determine that the termination of his parental rights was in Child's best interests. (**See** Father's Brief, at 14). We again disagree and approve of the trial court's analysis:

> In addition to the conduct of the Parent, the Court must also consider the needs and welfare of the Child applying a best interests of the child standard. During the hearing in this case, Mother testified that Father's periods of partial custody have consistently been supervised at Safe Haven, as Mother would be otherwise concerned for the Child's safety. Mother also testified that when the Child does communicate with Father, she becomes severely depressed and goes into angry rages for two (2) to three (3) days before being able to calm down. Finally, Mother stated that since Father has been absent in the Child's life, the Child has been very happy and healthy overall. As evidence of this, Mother stated that while Father was present in the Child's life, the Child was barely passing her classes in school. However, since Father has been away from the Child, the Child has been on the high honor roll each marking period.

(Trial Court Opinion, 6/22/17, at 4).

Father's claim that there was insufficient evidence to terminate his parental rights pursuant to 23 Pa.C.S.A. § 2511(b) is without merit.

Accordingly, we affirm the order of the Court of Common Pleas of Clearfield County that terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  11/29/2017